1:40 FILED
O'Clock P.M.

OCT 9, 2015

Signed _René Davis_
Clerk & Master
Clay Co. Tennessee

## IN THE CHANCERY COURT FOR CLAY COUNTY, TENNESSEE
## AT CELINA

| | | |
|---|---|---|
| TRACY FORD, as parent and next friend, for WYATT MABRY, CHRISTOPHER J. KANE, as parent and next friend, for SHELBY KANE,<br>　　　Plaintiffs,<br><br>v.<br><br>CLAY COUNTY BOARD OF EDUCATION and JERRY STRONG, in his official capacity,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 15-CV-4139 |

---

### COMPLAINT

---

**COMES NOW** the Plaintiffs, Tracy Ford, as parent and next friend, for Wyatt Mabry, and Christopher J. Kane, as parent and next friend, for Shelby Kane, and sue the Defendants, the Clay County Board of Education and Jerry Strong, in his official capacity, and for their cause of action would state as follows:

### I.　　JURISDICTION AND PARTIES

1.　　The Plaintiff, Tracy Ford (the "Plaintiff"), is a citizen and resident of Clay County, Tennessee. Tracy Ford is the mother of Wyatt Mabry, who is a high school senior attending Clay County High School. He is currently still a minor. She is bringing this action on his behalf as his parent and next friend.

2.　　The Plaintiff, Christopher J. Kane (the "Plaintiff"), is a citizen and resident of Clay County, Tennessee. Christopher J. Kane is the father of Shelby Kane,

1

who is a high school senior attending Clay County High School and is a member of its volleyball team. She is currently still a minor. He is bringing this action on her behalf as her parent and next friend.

3.    Defendant, Clay County Board of Education, is political subdivision within the state of Tennessee and a political subdivision of the State of Tennessee, further defined as a "person" pursuant 42 U.S.C. §§ 1983 and 1988.

4.    The individual Defendant, Jerry Strong, is the current director of the Clay County School System, and is also a "person" pursuant to 42 U.S.C. §§ 1983 and 1988.

5.    Defendant, Jerry Strong, is being sued in his official capacity only.

6.    The Plaintiffs would submit the acts and occurrences giving rise to this complaint all occurred in Clay County, Tennessee. Thus, venue is proper. Furthermore, as their children are students of Clay County High School, the Plaintiffs would submit they have standing to bring these claims which are fully justiciable pursuant to previous case law in the State of Tennessee.

7.    To the extent the Plaintiffs are seeking declaratory relief, they would do so pursuant to T.C.A. § 29-14-102, Rule 57 of the Tennessee Rules of Procedure, and the statutes and constitution of the State of Tennessee and the United States.

8.    The Plaintiffs bring their civil rights claims on behalf their children pursuant to 42 U.S.C. §§ 1983 and 1988.

9.    The Plaintiffs seek extraordinary relief pursuant to Rule 65 of the Tennessee Rules of Civil Procedure as well as the statutes and constitution of the State of Tennessee and the United States.

10. The Plaintiffs also invoke the equity jurisdiction of this Honorable Court.

11. The Plaintiffs would invoke and rely upon the following Tennessee constitutional provisions:

A. The State of Tennessee recognizes the inherent value of education and encourages its support. The General Assembly shall provide for the maintenance, support and eligibility standards of a system of free public schools. The General Assembly may establish and support such postsecondary educational institutions, including public institutions of higher learning, as it determines.

TN. Const. Art. 11, § 12;

B. The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunit[ies], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

TN. Const. Art. 11, § 8; and

C. That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

TN. Const. Art. 1, § 8.

12. Finally, the Plaintiffs would rely upon the following Tennessee statutes or statutory schemes:

A. T.C.A. § 49-6-3001, *et. seq.* (related to mandatory school attendance);

3

B.     T.C.A. § 49-2-101, *et. seq.* (related to the powers and duties of local county commissions)

C.     T.C.A. § 49-2-201, *et. seq.* (related to election, maintenance, powers and duties of local school boards);

D.     T.C.A. § 57-4-306, *et. seq.* (related to collection and distribution of tax revenue of the purpose and maintenance of local education).

## II.     MATERIAL ALLEGATIONS

13.     The Plaintiffs would adopt and re-state the allegations of paragraphs 1-12 as fully set forth herein.

14.     As noted *infra*, Clay County, Tennessee is a duly organized political sub-division of the State of Tennessee. The Clay County Board of Education is also a political subdivision of the State of Tennessee, independent from the Clay County Commission pursuant to Tennessee law.

15.     The Clay County Board of Education is comprised of duly elected Clay County citizens, charged with the duty, and imbued with the power, to operate and administer the Clay County educational system.

16.     Wyatt Mabry is a citizen and resident of Clay County, Tennessee and is currently a member of the senior class of Clay County High School.

17.     Shelby Kane is a citizen and resident of Clay County, Tennessee and is currently a member of the senior class of Clay County High School and member of its volleyball team. That the volleyball team is scheduled to participate in the regional tournament on Tuesday, October, 13, 2015, and with the Clay County Board of

4

Education's action on Thursday, October 8, 2015, such participation will not be possible.

18. To date, the Clay County Commission and the Clay County Board of Education are in a political imbroglio that has threatened the regular operation of the Clay County educational system. The source of the controversy and its attendant vagaries are inconsequential to this action. Accordingly, the Plaintiffs would not taint themselves or this litigation by attempting to decipher or unravel the pettiness that has brought the school system to this boiling point.

19. However, it is sufficient to state that both the Clay County Board of Education and the Clay County Commission have previously threatened to cease operation of the Clay County school system over differences related to budgeting and/or funding.

20. The Clay County school system is currently open and operating for the 2015-2016 school term, in spite of the aforementioned differences, but a closure is looming as the schism between these two political entities has grown. As of the drafting of this complaint, no formal budget has been passed or adopted for the school system.

21. However, the Clay County Commission has passed and adopted a formal budget has required by Tennessee, including relevant tax rates earmarked for the support and maintenance of the Clay County Education system. In fact, the budget has been passed and the tax bills have already been submitted to the State of Tennessee. The Defendants must now provide an approved budget to the State of Tennessee, which they have thus far failed to do.

5

22.   In return, the Clay County Board of Education has indicated it will not accept the *status quo* in terms of funding, and will close the school system and cease operation some time after its regular meeting scheduled for October 8, 2015. Upon information and belief, the Defendants intend to close the school system down entirely and lock all the doors to school property at midnight, October 10, 2015.

23.   Without determining right or wrong or attempting to navigate the turbulent waters of local politics, it is evident local officials are engaging a rather high stakes game of political "chicken," placing the children of Clay County, Tennessee in the middle of their standoff. The Plaintiffs' children are innocent bystanders, who merely want to go to school and graduate from Clay County High School.

24.   Wyatt Mabry and Shelby Kane are compelled to attend high school by state law. If the Clay County school system closes, the high school will cease operation, and they will be forced to cross county lines in an attempt to receive their required education and graduate on time. This will also place additional burdens on contiguous county educational systems, which will have to sort through the morass and determine which students are eligible to attend, and, probably, seek additional funding. All the children of Clay County, Tennessee would suffer from a comprehensive school shut down.

25.   The Plaintiffs would submit the threat of closure is very real and imminent. If the Clay County Board of Education and its superintendent continue to reject the county budget, the schools will close, and their children will be immediately and irreparably harmed. Upon information and belief, the Defendants

6

believe the State of Tennessee will swoop in and rectify any budget impasse and prevent a closing of the school system. A copy of an undated letter from Defendant Strong is attached to this complaint as Exhibit "A," and is incorporated herein *in haec verba*. In his letter, the Superintendent outlines the financial woes of the school system, and his displeasure with the budget passed by the Clay County Commission. A copy of an email from Defendant Strong is attached to this petition as Exhibit "B," and is incorporated into this petition *in haec verba*. In his email, the Superintendent emphasizes his displeasure with the budget, and outlines his previous plan to close the school unless there is some form of state action. However, in the letter attached to this petition as Exhibit "C," incorporated herein *in haec verba*, the Tennessee Department of Education has clearly indicated it has jurisdiction to intervene in this political fight, and any reliance on state action is futile.

26.     The Plaintiffs would submit Clay County, Tennessee has funding in place and available to fund the school system while this dispute unfolds and, hopefully, is resolved. However, should the county commission pass a budget, alternate funding will not be necessary and the board of education will have a budget in which to operate the school system. It may not be the budget it likes or approves, but it will keep the school system open and operational for the entire school year.

27.     Ultimately, the voting citizens of Clay County, Tennessee will have to determine who is accountable, and whether their elected officials have acted in the best interests of the students of Clay County. However, once the county commission

adopts and passes a budget, assuming it is within the state guidelines, it will have fulfilled its legal obligations. Again, it may not be prudent or ideal, but the school system will be funded.

28.     The specter of empty schools will then weigh heavily upon the board of education. It appears there will be no end to this impasse unless there is judicial intervention to enforce the laws of the United States and the State of Tennessee.

29.     Regardless, there is funding available to maintain and operate the Clay County School system. Currently, the Defendants have a budget which will fund the education system. Again, it may not be a budget the board approves of or even is in the best interests of the children of Clay County. The Clay County Commission appears to have complied with state law and now it is incumbent upon the Defendants to work within the parameters of the budget that has been passed. Because the Defendants have refused to submit an approved budget with the State of Tennessee, all BEP payments have been suspended as of October 1, 2015, further exacerbating existing funding problems. It should also be noted that the Clay County School System also has an emergency fund of approximately $2,000,000.00 to assist in the maintenance and management of its school system.

### III.     § 1983 CLAIMS

30.     The Plaintiffs would adopt and re-state the allegations of paragraphs 1-29 as fully set forth herein.

31.     Federal law provides as follows:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

8

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

32.     The Plaintiffs would submit their children have a statutory right to be educated by Clay County, Tennessee. In fact, they are obligated to attend schools pursuant to Tennessee law. They would also submit the Tennessee Constitution also guarantees a fundamental right to education flowing from the State of Tennessee to the local governmental entities.

33.     The State of Tennessee has promulgated statutes to methodically distribute tax revenue to local school systems, which, in turn, have the right to collect local tax revenue to fund local education. Clay County, Tennessee has received its allocated share of state tax revenue designed to fund its local school system, and Clay County, Tennessee has generated its own local tax revenue for the same purpose.

34.     The Plaintiffs would also submit their children have the right to equal protection of the laws under both the Tennessee and United States Constitutions.

35.     To ostensibly reject the authority and power of the Clay County Commission, by rejecting its presumed adoption of a budget, the Clay County Board of Education will deny the Plaintiffs' children their statutory and constitutional right to an education. It would also deny them the right to equal protection under the

9

law. When the Clay County School system ceases operation, children in neighboring counties, and across the State of Tennessee, will enter the halls of their local schools. However, the Plaintiffs' will be locked out from Clay County High School, unable to complete their education and graduate from the only high school they have attended.

36.     The Plaintiffs will then be required to secure an education for their children elsewhere, if that is even possible. They will have to travel to a neighboring school system, which may or may not allow them to enroll due to their residency or the timing of admission. Presumably, they could seek admission to a private high school, which would require them and their families to expend savings and require extensive travel. Again, this also presumes they would be admitted through a private institution's admissions process.

37.     The Plaintiffs would submit the Clay County Board of Education has an obligation to administer and operate the Clay County School system. If it chooses to close the schools, it would be in derogation of the statutory and constitutional rights the Plaintiffs derive from Tennessee law and the constitutions of Tennessee and the United States. The Clay County Commission has passed a budget and sent it to the board of education. The Defendants now have the obligation to work within that budget to provide an education for the children of Clay County.

38.     The Clay County Board of Education is the chief policy-maker for education in Clay County, Tennessee. Tennessee law grants the board of education the exclusive power, duty and broad discretion to operate the local system. There could be no greater policy determination and/or decision, or one more

10

consequential, than to close the school system. Accordingly, the Plaintiffs would submit the actions of the Clay County Board of Education constitute a policy of deprivation of their children's statutory and constitutional rights. As such, the actions and omissions of the Defendants constitute an official policy of deprivation of existing constitutional and statutory rights.

39.     The damage to the Plaintiffs would be irreparable and catastrophic. As such, the Plaintiffs would respectfully submit the planned closure of the Clay County school system violates 42 U.S.C. 42 § 1983. As a direct and proximate result, they will suffer injury and/or damages as fully set forth herein.

## IV.     DECLARATORY RELIEF

40.     The Plaintiff would adopt and re-state the allegations of paragraphs 1-39 as fully set forth herein.

41.     The Plaintiffs would respectfully submit the actions and/or conduct of the Clay County Board of Education violates Tennessee law and the United States and Tennessee Constitutions.

42.     As discussed *infra*, the constitution of Tennessee guarantees a state-supported educational system. The State of Tennessee has promulgated very specific and comprehensive laws to fully advance the guarantees of the state education clause. Clay County, Tennessee will presumably adopt and pass a budget thereby funding the local school system.

43.     The failure by the Clay County Board of Education to accept a budget, and, essentially, thumb its nose at the county commission usurps both the authority of the State of Tennessee and the Clay County Commission. The board of education

11

may not like the budget, and they may have good reason. Regardless, it has an obligation to operate the local school system. Its power and authority does not give it the authority to reject the county's proposed budget and simply close its schools. The budgetary obligations reside with the county commission. Administration of the school system resides with the board of education. Their respective spheres of authority are clearly demarcated.

44.     The Plaintiffs would submit the actions and conduct of the Clay County Board of Education are violative of Tennessee law, the Tennessee Constitution and the United States Constitution. Specifically, the Plaintiffs would submit the actions and conduct of the Clay County Board of Education, including, but not limited to, intentions to close the Clay County school system, violate Tennessee statutes regarding education and the constitutional protections guaranteeing a public education, due process and equal protection of the laws.

45.     The Plaintiffs seek this Honorable Court to find and declare the respective rights, responsibilities, duties and obligations of the parties pursuant to relative statutory and constitutional provisions.

## V.     EXTRAORDINARY AND INJUNTIVE RELIEF

46.     The Plaintiffs would adopt and re-state the allegations of paragraphs 1-45 as fully set forth herein.

47.     The Plaintiffs would submit the threatened closure is imminent as the Board has voted to close the Clay County school system, including Clay County High School, at midnight on October 10, 2015. This closure would prevent the Plaintiff, Shelby Kane, and the Clay County High School volleyball team from participation in

12

the Regional volleyball tournament, which would cause her immediate and irreparable harm. The Plaintiffs would make this assertion based upon the allegations set forth *supra*, which are incorporated herein.

48.     Furthermore, the Plaintiffs would respectfully submit there is no reasonable expectation they will be able to secure a full hearing on these issues before the Clay County Board of Education carries through with its threat to close their high school, and all public schools located in Clay County, Tennessee.

49.     Accordingly, the Plaintiffs will ask this Court for a temporary restraining order to prohibit the Defendants from closing or threatening to close the public schools of Clay County, Tennessee or cease their operation and/or maintenance pending a temporary hearing, at which time they will ask for a temporary injunction.

50.     The Plaintiffs would submit this Court has the power to authorize a temporary restraining order and schedule a temporary hearing, so the Plaintiffs' rights, and those of their children, may be preserved while this case is pending.

51.     The Plaintiffs would respectfully submit their children would suffer great prejudice were the Defendants to close the public school system in Clay County, Tennessee. Moreover, public policy, as directed by Tennessee law and the Tennessee constitution, weighs heavily in favor of supporting, and keeping in operation, a public school system. Finally, they are likely to prevail on the merits of this cause.

52.     This is the first application for extraordinary relief in this cause.

## V.    PRAYER

**WHEREFORE PREMISES CONSIDERED** the Plaintiffs would pray this Honorable Court for the following relief:

A.     That all Defendants be served with process and be required to file a response within the time period prescribed by law;

B.     That a temporary restraining order issue upon the Defendants, restraining and enjoining the Clay County Board of Education, including its individual members, from closing the Clay County school system, including, but not limited to all public schools, or ceasing operation, pending a temporary hearing in this cause;

C.     That a temporary hearing be scheduled immediately and that this Court enter a temporary injunction ordering the Clay County Board of Education, including its individual members, to operate, maintain and keep open all public schools of Clay County, Tennessee, within the constraints of any approved budget duly ratified by the Clay County Commission, pending a full and final hearing in this cause;

D.     That a final hearing be scheduled in this cause, following a due course of written and oral discovery;

E.     That this Court specifically grant the following relief:

        1.     That the Court grant declaratory relief defining the parties' relative rights, responsibilities, obligations and duties pursuant to Tennessee and United States law;

14

2.     That this Court find and declare the Defendants'
responsibilities, obligations, duties and requirements specifically related to the
administration of the Clay County school system under Tennessee law and within
the constraints of any duly passed and ratified budget;

3.     That this Court find and declare the Defendants' rights,
responsibilities, obligations, duties and requirements to operate, maintain and keep
open the public schools of Clay County, Tennessee;

4.     That this Court find and declare the Defendants' statutory and
constitutional requirements to administer the public school system in Clay County,
Tennessee and any violations of this obligations;

5.     That this Court enter a permanent injunction requiring the
Clay County Board of Education to maintain, operate and administer the public
schools of Clay County, Tennessee for the 2015-2016 school term within the
confines of any duly enacted budgetary requirements;

6.     That this Court render a judgment for the Plaintiffs and against
the Defendants, jointly and severally, for any violations of 42 U.S.C. § 1983 and the
deprivation of their constitutional and statutory rights, in an amount to be
determined in the final trial of this cause;

7.     That the Plaintiffs be granted their reasonable attorney fees
pursuant to 42 U.S.C. § 1988; and

8.     For such other and general relief that they may show
themselves entitled in the final hearing of this cause; and

F.  That the Court make and findings of fact and conclusions of law as required by law in this cause.

RESPECTFULLY SUBMITTED this the ___9th___ day of **October, 2015.**

TRACY FORD, as parent and next friend
For Wyatt Mabry

CHRISTOPHER J. KANE, as parent and
next friend for Shelby Kane

By: _____
MICHAEL R. GIAIMO, BPR#019894
JAMES D. WHITE, BPR#010313
Attorneys for the Plaintiff
204 N. Washington Avenue
Cookeville, Tennessee 38501
(931) 372-7515

**OATH**

STATE OF TENNESSEE        )
COUNTY OF CLAY            )

Comes now the Plaintiff, Tracy Ford, who, after first being duly sworn according to law, would state and depose that she has reviewed the foregoing Complaint, and all averments contained therein, both in statement and in fact, are true and correct to the best of her information, knowledge and belief.

_____
TRACY FORD

Sworn and subscribed to before me this the ___9___ day of October, 2015.

_____
NOTARY PUBLIC

My commission expires: __11/8/2017__

16

## OATH

STATE OF TENNESSEE    )
COUNTY OF CLAY        )

       Comes now the Plaintiff, Christopher J. Kane, who, after first being duly sworn according to law, would state and depose that he has reviewed the foregoing Complaint, and all averments contained therein, both in statement and in fact, are true and correct to the best of his information, knowledge and belief.

_____
CHRISTOPHER J. KANE

Sworn and subscribed to before me this the _____9_____ day of October, 2015.

_____
NOTARY PUBLIC

My commission expires: 11/8/2017

## COST BOND

       We, the undersigned, do hereby acknowledge ourselves as sureties for the costs of this cause.

_____
MICHAEL R. GIAIMO

_____
JAMES D. WHITE

17

# IN THE CHANCERY COURT FOR CLAY COUNTY, TENNESSEE
## AT CELINA

FILED

1:40 O'Clock P M

OCT 9, 2015

Signed _X. Reneé aus_
Clerk & Master
Clay Co. Tennessee

TRACY FORD, as parent and next )
friend, for WYATT MABRY, )
CRISTOPHER J. KANE, as parent )
and next friend, for )
SHELBY KANE, )

      Plaintiffs, )   No. _15-CV-4139_
                )
v. )
                )
CLAY COUNTY BOARD OF EDUCATION )
and JERRY STRONG, in his official )
capacity, )
      Defendants. )

---

## SURETY BOND

---

    We, TRACY FORD, as parent and next friend for Wyatt Mabry, and CHRISTOPHER J.

KANE, as parent and next friend for Shelby Kane, Plaintiffs and sureties in the above styled

matter, do hereby acknowledge ourselves as sureties for the penal sum of _10,000.⁰⁰_ to

the Clay County Board of Education and Jerry Strong, Defendants, for any damage, injury or

costs for wrongful restraint in this cause.

                                _[signature]_
                                SURETY

                                _[signature]_
                                SURETY

# IN THE CHANCERY COURT FOR CLAY COUNTY, TENNESSEE

## AT CELINA

TRACY FORD, as parent and next )
friend, for WYATT MABRY, )
CRISTOPHER J. KANE, as parent )
and next friend, for )
SHELBY KANE, )

      Plaintiffs, )

v. )
                  )
CLAY COUNTY BOARD OF EDUCATION )
and JERRY STRONG, in his official )
capacity, )
      Defendants. )

No. 16-CV-4139

FILED
1:40 O'Clock P M
OCT 9, 2015
Signed _____
Clerk & Master
Clay Co. Tennessee

---

## SURETY BOND

---

We, TRACY FORD, as parent and next friend for Wyatt Mabry, and CHRISTOPHER J. KANE, as parent and next friend for Shelby Kane, Plaintiffs and sureties in the above styled matter, do hereby acknowledge ourselves as sureties for the penal sum of $10,000 to the Clay County Board of Education and Jerry Strong, Defendants, for any damage, injury or costs for wrongful restraint in this cause.

_____
SURETY

_____
SURETY

# Clay County Schools

### Jerry Strong, Director
P.O. Box 469, 520 Brown Street
Celina, Tennessee 38551
Phone: 931-243-3310    Fax: 931-243-3706

**Board Members:**

Christina Crawford
Veda Hix
Todd Lynn
Chris McLerran

Benji Bailey, Chair
Anthony Smith, Vice-Chair

Nathan Sherrell
Todd Upton
Vonda Weir
David West

The Clay County Board of Education (CCBE) will fail to have an approved budget submitted to the Department of Education (DOE) by October 1, 2015. CCBE's initial request of a $315,000 budget increase was reduced to $200,000 following the County Commission's flat rejection of the same. The CCBE stood firm, made punitive cuts to personnel, and adopted a 2015-16 budget with a $200,000 increase to offset mandated requirements of the Affordable Care Act (ACA). This budget has been repeatedly rejected by the Clay County Commission. Instead, the Commission "allocated the school system the same amount as last year" by adopting last year's school budget with only an increase in revenue of $16,000 for growth monies. The CCBE feels the increase requested in the current budget is necessary to keep the school system solvent. Many state officials agree if the action taken by the Clay County Commission is acceptable, funding of schools will, as we know the process, render local school boards to that of figurehead status in charge of an empty body.

Clay County Schools (CCS) is a small rural school system with only 1,200 students. Student enrollment has remained stagnant for the past few years. CCS has a $9.5 million budget. Clay County has 3 schools, two PreK-8 schools and one high school. Clay County High School (CCHS) is 13 years new. The CCBE is responsible for the payments for CCHS. Initially, there was additional sales tax money allocated to make payments on the facility. As the payments increase, BEP funding will have to be utilized to meet the payments as well as the total debt reserve. Only twice in the past 28 years has the County Commission assisted the school system with adjustments: 1) When CCHS was built, sales tax dollars were assigned to make payments for the new school. 2) A couple of years ago, an additional one cent in property tax was given to meet maintenance of effort (MOE).

Even before I became Director, I knew the fiscal condition of our school system was critical. I also knew Clay County in general did not have the potential to generate tax dollars to further support the school system. The majority of the $9.5 million budget is devoted to salaries and other State and Federal required spending. The CCBE controls the spending of less than $3 million of the total budget. When I became Director, the CCBE began a campaign of reducing expenditures to meet the demand of required expenditures. In my three-year tenure, approximately $840,000 has been cut from the expenditures that the Board controls. Closing an elementary school, offering a teacher retirement incentive to veteran teachers and replacing them

*The mission of Clay County Schools is to provide a positive learning environment in which students develop to their fullest potential, achieve success, and are prepared to meet the challenges of an ever-changing world.*

EXHIBIT
A

with less expensive beginning teachers, and a reduction in force were part of the efforts to conserve.

What is the fiscal problem facing Clay County Schools? Partially unfunded mandates, the totally unfunded Affordable Care Act, and an unfavorable student/teacher ratio are all contributing factors.

1) Partially unfunded mandates in the past five years have grown to over $700,000 annually. The CCBE made cuts that did stabilize what had been a systematically declining fund balance. However;

2) The introduction of the Affordable Care Act is the straw that broke the financial back of our school system. Years ago, when funds were made available through BEP for non-certified employees to have insurance, the CCBE deemed it more important to offer certified employees family plans with those funds. Clay County teachers were and are the lowest paid teachers in the state. Offering family plans to teachers was an attempt to compete with surrounding counties offering higher salaries and benefits. The rationale was that non-certified employees could have insurance coverage by participating in the TennCare program. The mandated ACA had a crippling effect on our school finances. All employees, certified and non-certified alike, had to be offered the same coverage. Non-certified employees had only recently been offered an extremely limited plan. It must be noted the CCBE had options in choosing an insurance plan. The Board chose a middle of the road plan that would add a cost of $315,000 to insurance expenses. That plan was selected because it maintained existing coverage without adding to the expense for teachers. A plan that would have cost the CCBE approximately $70,000 less could have been chosen, but adding additional expense to school staff.

3) Clay County School System maintains the minimum number of teachers to meet state requirements for class size and graduation requirements. Hermitage Springs PreK-8 and CCHS have student/teacher ratios of 16:1, while Celina PreK-8 has a student/teacher ratio of 22:1. Raising the student/teacher ratio to 25:1 would increase enrollment capacity by 400 students, adding an additional $2 million in BEP revenue. This could be accomplished theoretically without adding a teacher. The current student/teacher ratios are beyond anyone's control. If Clay County could "magically" acquire 400 more students, the request for a tax increase would not be needed.

CCS ended the 2014-15 fiscal year with a fund balance of approximately $2,100,000. At this point an important question needs to be addressed. Why ask for a tax increase with a $2,100,000 fund balance? This is one of the County Commission's concerns. CCS fund balance is comprised of 3 main components: 1) Debt Reserve (approximately $920,000); 2) BEP Reserve (approximately $720,000); 3) Undesignated Fund Balance (approximately $410,000).

1) The debt reserve was established when CCHS was constructed. A DOE fiscal consultant has placed the equivalent of the last two payments on CCHS in the reserve. Those two payments total $909,000. Mr. Ron Queen, Comptroller's Office, treats the debt reserve as cash and says it should be spent down maintaining only one payment in reserve. Could then the debt reserve be used to pay for the mandated additional expenditures for staff insurance for two years? NO. Mr. Queen says not. Insurance expenditures are recurring. Spend-down from the debt reserve should only be used for one-time expenditures. My

*The mission of Clay County Schools is to provide a positive learning environment in which students develop to their fullest potential, achieve success, and are prepared to meet the challenges of an ever-changing world.*

concern is if we spend the debt reserve down, what assurance is there that the funds can be put back in the future to avoid defaulting on the bonds? Additionally, the loan is a variable interest rate. If the interest rate should climb, there would be a short fall in the debt reserve if only one payment were available.

2) To my knowledge, everyone agrees the BEP Reserve is not considered to be counted as cash and is to be utilized only for one-time expenditures. Mr. Queen and DOE agree the BEP Reserve is not considered part of the cash.

3) Everyone agrees the Undesignated Fund balance ($410,000) is considered cash and can be used to satisfy the mandated expenditures of the ACA. According to the DOE, 3% of the total operating budget must not be spent by local decision. DOE determined the 3% would be $250,000. Removing that amount from the $410,000 leaves only $160,000 to pay for the mandated ACA if there is no additional revenue from the Clay County Commission.

If I am correct in the above assumptions, CCS will end the 2015-16 school year having used all of the undesignated fund balance available and dipping into the debt reserve by $40,000. What is to be gained by postponing action on this matter for another year? Will the CCBE be financially able to open schools next year? Remarks made by the Comptroller's Office make me wonder if I have made a terrible mistake in my philosophy of financial management of the school system. The CCBE and my team have tried to be good stewards of public dollars by being extremely conservative. Cuts in personnel and educational opportunities for students are starting to affect the educational process. Being conservative was an effort to attempt to maintain a fund balance and avoid asking for additional tax dollars as long as possible. If zero-based budgeting is the rule, I have made a terrible mistake. I should have invested more money in classrooms achieving better educational opportunities for our boys and girls. I suppose spending down would have guaranteed new revenue. I feel at this moment that the children of Clay County are being punished because of my conservative approach to finance.

Setting aside local petty politics, the primary reason for the Commission's reluctance to assist CCS is threefold. First, Commissioners are attempting to keep their promise to voters of no new taxes. Second, the Commission offers their employees the minimum in insurance coverage and will not support the CCS in offering its staff an insurance plan that is better. Third, Commissioners are not knowledgeable of school finances. Despite repeated invitations extended to Commissioners to learn basics of the school budget, only two of ten Commissioners have expressed interest in learning basic concepts of school budgeting.

Has compromise occurred? The CCBE originally asked the Commission for a $315,000 increase to cover the expense of the ACA. The CCBE requested the funds be generated by increasing the wheel tax, realizing the hardship of tax payers having a thirty cent increase on the property tax (one cent on the property tax brings in approximately $10,400). Commissioners rejected that request, indicating they were saving the wheel tax to fund the possible building of a badly needed jail. The CCBE compromised by next requesting $200,000 in new revenue, instructing the Director of Schools to enact a reduction in force to offset the remaining $114,000. In the August 31 Commission meeting, avoiding a County shutdown, Commissioners adopted a resolution giving CCS the equivalent of the 2014-15 appropriation with growth monies of $16,000. A blank budget with the bottom line filled in was sent by Commissioners to the CCBE instructing the Board to fill in the budget to meet the approved bottom line. In the September

*The mission of Clay County Schools is to provide a positive learning environment in which students develop to their fullest potential, achieve success, and are prepared to meet the challenges of an ever-changing world.*

Commission meeting a resolution was adopted to place a referendum before the voters in the March Presidential Primary of a $27 increase in the wheel tax devoted to the school general purpose budget. My personal instincts would question the likelihood of Clay County citizens voting themselves any tax increase regardless of the validity of the request. If the Commission had met the Board's request of an additional $200,000 by increasing the property tax, what would have been the financial impact on individual tax payers? The average assessed value of a home in Clay County is $62,000. A twenty cent increase on the property tax would have cost the average property owner **only an additional $30 per year**.

The unstable and uncertain future of Clay County School's finances will have a disastrous effect on the education of boys and girls in the rural community of Clay County. Quality teachers will certainly be forced to seek more stable teaching positions in surrounding counties. Required mandates beyond the School Board's control have created this financial situation. The massive cuts that have been made by CCBE are an indication that a genuine effort has been made to meet continual mandates without a tax increase.

Today, Clay County proudly boasts about our educational progress. Clay County High School is in the top 5% of schools in Tennessee for academic progress, earning the designation as a Reward School the last two consecutive years. Academically, the two elementary schools are improving and are destined to achieve Reward School status. I am very proud of the efforts of our students, teachers, and administrators. To be certain, this wonderful momentum could sadly come to an end because of a dispute over $30 per year. Without necessary funding, will our teachers be able to retain their middle of the road insurance plan? How can teacher morale remain high when their class loads could increase because of personnel cuts? How can teachers continue their schools' academic improvement with fewer resources and more students? Teachers are the single most important factor in student success. Clay County teachers already are the lowest paid and have the fewest benefits in the state. How can we in good conscience ask them to do more with even less?

Sincerely,

Jerry Strong
Director of Clay County Schools

*The mission of Clay County Schools is to provide a positive learning environment in which students develop to their fullest potential, achieve success, and are prepared to meet the challenges of an ever-changing world.*

fire training

Fire

firehouse

gov. conf.

grants

health care

Hotel motel t...

housing help...

hub zone

hud housing

I D Board mee.... (1)

I.D. Board by-...

insurance

intersection

jail training

jailers fees

james keith ta...

justin

letters

library

litter grant

mitchell creek

my photos

new prospects

nitra

north overton ...

north west cla...

oil grant

package liquor

parks

plans for jail...

port letters

public hearing...

R.P.O meetings

referenda

relay

road decidated...

sales tax lett...

Short <rshort@clayedu.com>. Rob Edwards <edwarter@clayedu.com>. Robbie Strong <rstrong@clayedu.com>

Sent per Mr. Strong's request.
Please see message below from Mr. Strong.
Lisa White
Attendance Supervisor
Technology Director
District Configurator
Clay County Schools
931-243-3310
931-243-5501 Direct Line
931-319-5342 Cell
whitel@clayedu.com

"The mission of Clay County Schools is to provide a positive learning environment in which students develop to their fullest potential, achieve success, and are prepared to meet the challenges of an ever-changing world."

——— Forwarded message ———
From: Jerry Strong <strong@clayedu.com>
Date: Tue, Sep 29, 2015 at 6:58 AM
Subject: What's Next For Clay County Schools?
To: Lisa White <whitel@clayedu.com>

As everyone knows the School Board requested a tax increase from the Commission of $200,000 to pay for staff insurance. That proposal was rejected by the Commission. On August 31 to avoid a County shutdown the Commission adopted a resolution setting the tax rate and sending a blank school budget if the School Board with only the bottom line filled in based on last year's budget. The Board was instructed to fill in the budget $200,000 less than their initial request. The Commission reported to the Comptroller's Office of a unified budget in Clay County. This action has created great interest at the State level and if the action stands. School Boards across the State of Tennessee will be affected. In the Commission's regular October meeting they passed a resolution placing a referendum on the March presidential primary increasing the wheel tax by $27.00 to go to the schools. If voters approve the tax, funds from the tax would start trickling in next fiscal year.

In the Department of Education's view a unified budget does not exist in Clay County. Presently, the School Board does not have an approved budget to submit to the Department of Education (DOE) by the October 1 deadline. I have spoken with DOE finance staff. They have told me BEP funding will be terminated shortly after October 1. The date set by the Board for school closing if the State withheld funding was October 9. Closing will be necessary; without BEP dollars the school system would soon be without funds.

When I speak to different people at the State level, I sometimes receive conflicting viewpoints. Even the people in charge have not dealt with a situation like we have experienced in Clay County. As developments occur, I will keep you informed. For now it is important to know:
1) The majority of the Board want to maintain the insurance for the employees of the school system.
2) The Commission would not accept the school budget.
3) The School System does not have an approved budget.
4) Without the DOE approving the school budget on October 1, BEP funds will be withheld by the State.
5) Without BEP funding, Clay County Schools will shut down October 9 at 11:59 PM.

My understanding is the State will send in a team to mediate the problem after the announcement that BEP funding will be stopped. I do not know what their time frame would be.

—
Jerry Strong

Director of Schools
Clay County



EXHIBIT
B



**STATE OF TENNESSEE**
**DEPARTMENT OF EDUCATION**
NINTH FLOOR, ANDREW JOHNSON TOWER
710 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-0375

**BILL HASLAM**
GOVERNOR

**CANDICE MCQUEEN**
COMMISSIONER

September 30, 2015

*VIA ELECTRONIC MAIL*
Mr. Jerry Strong, Director
Clay County Schools
P.O. Box 469, 520 Brown Street
Celina, TN 38551
strongj@clayedu.com

Dear Director Strong:

I am in receipt of your September 29, 2015 letter regarding the funding issues in Clay County and the inability for the board of education to submit an approved budget to the Tennessee Department of Education (TDOE) by the October 1 deadline provided in state law. While I can certainly appreciate your frustration regarding this matter, the TDOE only has the legal authority to intervene in areas where it has been given specific authority by the Tennessee General Assembly. Approving school district budgets is a local matter.

Tenn. Code Ann. § 49-3-316(d) provides:

> (d)(1) In the event that the local fiscal body has not adopted a budget for the operation of the public schools by July 1 of any year, the school budget for the year just ended shall continue in effect until a new school budget has been approved.
> (2) However, expenditures mandated by this part and implemented by rules, regulations, and minimum standards of the state board shall be incorporated into this continuing budget.
> (3) Any such continuing budget adopted by the local fiscal body shall not be valid beyond October 1 of the current fiscal year for purposes of the LEA's eligibility to receive state school funds.

The TDOE has always interpreted (d)(3) above as prohibiting any LEA that has not submitted a fully approved budget to the TDOE by October 1 from receiving further BEP funds. If the Clay County Board of Education has not submitted a fully approved budget by October 1, the TDOE will begin withholding BEP payments.

If you have further questions regarding this matter, you may call the TDOE General Counsel, Christy Ballard at 615-741-2921 or the Executive Director of Local Finance, Maryanne Durski at 615-532-9510.

Sincerely,

*Candice McQueen*

Dr. Candice McQueen

Cc:    Kathleen Airhart, Deputy Commissioner and Chief Operations Officer
       Stephen Smith, Deputy Commissioner of Policy and External Affairs
       Christy Ballard, General Counsel
       Maryanne Durski, Executive Director of Local Finance
       Wayne Miller, Executive Director, TOSS

**EXHIBIT**
**C**